UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

| Present: The Honorable | **Jay C. Gandhi, United States Magistrate Judge** | |
|---|---|---|
| Kristee Hopkins | None Appearing | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None Appearing | | None Appearing |

**Proceedings:** (IN CHAMBERS) ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR A NEW TRIAL

    The Court is in receipt of: (1) Defendant's renewed motion for judgment as a matter of law ("JMOL Motion"), Plaintiff's opposition ("Opp. to JMOL Motion"), and Defendant's reply ("Reply Re JMOL Motion"), [*see* Dkt. Nos. 182, 186, 198, 201]; and (2) Defendant's motion for a new trial or, alternatively, remittitur ("New Trial Motion"), Plaintiff's Opposition ("Opp. to New Trial Motion"), and Defendant's reply ("Reply Re New Trial Motion"), [Dkt. Nos. 182, 187, 199, 202, 203]. The Court also held a hearing on Defendant's motions on February 17, 2017. [Dkt. Nos. 204, 205.]

    For the reasons discussed below, Defendant's JMOL Motion and New Trial Motion are both **DENIED**.

## I.    Background

    On August 19, 2014, Plaintiff sued Defendant for, *inter alia*, breach of oral contract, breach of implied contract, interference with contractual business relations, and fraud. [*See* Dkt. No. 1.]

    In November 2016, this Court presided over a jury trial in this matter in which Plaintiff argued each of those claims. [*See* Dkt. Nos. 149-150, 153, 156, 158.] On each claim, Plaintiff bore the burden of proof by a preponderance of the evidence. *Wong Kwai Sing v. Dulles*, 265 F.2d 131, 133 n.2 (9th Cir. 1959) (finding that the "ordinary civil" burden of proof is preponderance of the evidence).

    During trial, Defendant requested that its proposed jury instructions based on California Commercial Code section 2309 be given. [Dkt. No. 155.] The Court denied the request, in part because it was duplicative of the jointly proposed, and eventually issued, instruction regarding benefit of the bargain damages. [Dkt. No. 161 at 28; Dkt. No. 194 at 690.]

    After four days of evidence and argument, and several hours of deliberation, the jury returned a verdict for Plaintiff on all claims, issued a damages award of $6,203,000, and also found that Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

engaged in malice, oppression or fraud by clear and convincing evidence. [Dkt. No. 168.] Following the verdict, the parties proceeded with the punitive damages phase of the trial. [Dkt. No. 195 at 932:11-16.] Following arguments by both parties, the jury deliberated and issued a punitive damages award of $6,000,000. [*See* Dkt. Nos. 169.] Judgment was entered thereafter. [Dkt. No. 177.]

Defendant argues that judgment as a matter of law is warranted because: (1) Plaintiff did not present sufficient evidence to establish Defendant's liability for breach of contract and fraud; and (2) Plaintiff did not present sufficient evidence to establish the amount of compensatory damages awarded by the jury. (*See generally* JMOL Mot.; Reply Re JMOL Mot.) Relatedly, Defendant also argues that a new trial is warranted because: (1) the Court allegedly failed to instruct the jury on California Commercial Code Section 2309; (2) Plaintiff's expert's testimony was inadmissible, unreliable, and prejudicial; (3) the jury's verdict was against the clear weight of the evidence; and (4) the total damages awarded were excessive and against the clear weight of the evidence. (*See generally* New Trial Mot.; Reply Re New Trial Mot.) Defendant alternatively requests a remitter on both the compensatory and punitive damages awarded. (*Id*.)[1]

The Court addresses each of these contentions below, and finds that each lacks merit.

## II. Legal Standards

### A. Judgment as a Matter of Law

A motion for judgment as a matter of law after the verdict renews the moving party's prior Rule 50(a) motion for judgment as a matter of law at the close of all the evidence. Fed. R. Civ. P. 50(b). Judgment as a matter of law after the verdict may be granted only when the "evidence and its inferences, construed as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion" as to the verdict. *Kern v. Levolor Lorentzen, Inc.*, 899 F.2d 772, 775 (9th Cir.1990). Where there is sufficient conflicting evidence, or if "reasonable minds could differ over the verdict," judgment as a matter of law after the verdict is improper. *See Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 181 (9th Cir.1989) (internal citation and quotation marks omitted).

Moreover, when the sufficiency of the evidence is questioned and is the basis of a Rule 50(b) motion, the inquiry is whether there was "substantial evidence" in favor of the jury's verdict. *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir.2002). Substantial evidence is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).

//

---

[1] Defendant reiterated, and Plaintiff responded to, these arguments at the February 17, 2017 hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

**B.     New Trial and Remittitur**

Under Federal Rule of Civil Procedure 59(a), a federal court may grant a new jury trial for "grounds that have been historically recognized." *Zhang v. Am. Gem. Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). In other words, "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). Notably, "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

In deciding a motion for a new trial, "the district court may, in its discretion, grant the motion and order a new trial . . . or deny the motion and reinstate the judgment . . . , or grant a remittitur with the alternative of a new trial if the remittitur is not complied with." *Milhouse v. Travelers Commercial Ins. Co.*, 982 F. Supp. 2d 1088, 1093 (C.D. Cal. 2013) (internal citation and quotation marks omitted), *aff'd*, 641 F. App'x 714 (9th Cir. 2016). A motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under FRCP 59. *Morris v. Walgreen Oshkosh, Inc.*, 2016 WL 1704320, at *3 (D. Or. Apr. 28, 2016), *appeal dismissed* (Sept. 20, 2016). If the Court "decides to offer the option of a remittitur, the jury's verdict should be reduced to the maximum amount sustainable by the proof." *Milhouse*, 982 F. Supp. 2d at 1093 (internal citation and quotation marks omitted).

**III.     Discussion**

   **A.     Neither Judgment as a Matter of Law Nor a New Trial is Warranted on the Grounds that Plaintiff Failed to Present Sufficient Evidence for Breach of Contract and Fraud[2]**

      1.     There was Substantial Evidence of a Breach of Contract

Defendant claims that: (1) "[Plaintiff] failed to show that the alleged exclusive distributorship agreement even existed, as there was no meeting of the minds"; (2) "there was insufficient evidence to show that [Plaintiff] provided adequate consideration to [Defendant] for its exclusivity"; and (3) there is a "lack of evidence that [Defendant] terminated [Plaintiff]." (JMOL Mot. at 4, 9.)

---

[2]     Because the arguments in Sections III.A. and III.B. are incorporated into Defendant's New Trial Motion, (*see* New Trial Mot. at 14-15), the Court concludes its analysis of these arguments with a determination of whether the contested jury verdict is (1) supported by substantial evidence and (2) consistent with the clear weight of the evidence presented, as the former determination does not necessarily imply the latter. *See Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957) ("[T]he trial judge then had the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence . . . .").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

As a rule, the elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages. *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014). Relatedly, "[a] cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). Notably, "[u]sage or custom may be looked to, both to explain the meaning of language and to imply terms, where no contrary intent appears from the terms of the contract." *Howard Entm't, Inc. v. Kudrow*, 208 Cal. App. 4th 1102, 1114 (2012) (internal citation and quotation marks omitted).

Here, as Defendant admits, "[Plaintiff] produced evidence showing that [Defendant] referred to [Plaintiff] as its exclusive dealer in the United States." (JMOL Mot. at 5.) Specifically, according to the testimony of Peter Tsai ("Mr. Tsai"), Plaintiff's founder and CEO: (1) he and Defendant's founder, Joseph Chen ("Mr. Chen"), agreed in 1987 that "Defendant will build machinery and not sell to any other people in the USA market," and "Plaintiff will . . . only bring [Defendant's] machine and not . . . [those] from any other competitor"; (2) in 2003, Mr. Chen told him that Plaintiff had an "exclusive relationship" with Defendant; and (3) in the same year, Mr. Chen told him that the relationship between the two companies "will be running for" another 20 years. [Dkt. No. 189 at 141:13-15, 142:10-24; 160:9-14.] There was also documentary evidence of the exclusivity arrangement, such as: (1) a 2013 email from Mr. Chen to one of Plaintiff's dealers, in which Mr. Chen states that "[Plaintiff] is our formal exclusive dealer in USA," [*id.* at 159:1-10; Dkt. No. 200-2 at 2]; and (2) a 2013 email from Daniel Lu ("Mr. Lu"), sales manager for Defendant, to Mr. Tsai, in which Mr. Lu says "[Plaintiff] is our exclusive dealer in USA (whole territory)," [Dkt. No. 189 at 160:15-161:21; Dkt. No. 200-3 at 17]. As such, there was substantial evidence of an exclusive distributorship agreement ("Distribution Agreement") between the two parties.

There was also evidence of a contract term governing the manner in which a party could terminate. Specifically: (1) Mr. Tsai testified that pursuant to the "machine tool industry in the United States" and the Distribution Agreement between Plaintiff and Defendant, Defendant would have to buy back the equipment it previously sold to Plaintiff if it wished to terminate, [Dkt. No. 189 at 143:7-144:14]; (2) Plaintiff's Vice President of Marketing, Bo Jean ("Mr. Jean"), testified that it was customary for the seller of machinery/equipment to buy back its equipment from the buyer/dealer if the seller intended to terminate the business relationship, [Dkt. No. 192 at 496:11-497:13]; (3) Mr. Tsai testified that, in 2010, he told Mr. Lu that Defendant would have to buy back "all the inventory" and "outstanding machines" if it wanted to terminate the Distribution Agreement, [Dkt. No 190 at 279:8-280:3]; (4) Mr. Tsai further testified that Mr. Lu did not object to such a condition, [*id.* at 280:4-7]; and (5) Mr. Lu confirmed that Mr. Tsai had told him in a 2010 email that Defendant could terminate only after it bought back the machinery and parts in Plaintiff's possession, [Dkt. No. 191 at 355:3-7].[3]

---

[3] While Mr. Jean testified that, based on his understanding, "there were no specific terms that had to be met first in order for [Defendant] to terminate" the Distribution Agreement, [Dkt. No. 193 at 567:18-21], Mr. Jean subsequently: (1) left

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

There was also evidence that, in consideration of these terms, Plaintiff was prohibited from selling the same kind of machines that it was getting from Defendant. [Dkt. No. 189 at 142:16-24 (testimony of Mr. Tsai).] Furthermore, Plaintiff was required to install the machines at their customers' premises, honor warranty and service obligations, and maintain a trained service staff and parts department. [*Id.*; Dkt. No. 190 at 299:10-300:12 (testimony of Andrew Chen, son of Mr. Chen and Defendant's current chairman), 319:2-14 (testimony of Mr. Lu); Dkt. No. 192 at 443:8-18 (testimony of Alex Tseng ("Mr. Tseng"), Defendant's sales specialist).]

Moreover, Plaintiff presented evidence in support of its claim that Defendant terminated the Distribution Agreement. Specifically, Defendant's representative emailed Mr. Jean and Mr. Tsai on June 23, 2014, and imposed onerous conditions on Plaintiff (*i.e.*, limitation of sales to 10 U.S. states and a prohibition on selling "other Taiwan[-]brand[-]assembled center machines"). [Dkt. No. 192 at 526:1-10; Dkt. No. 200-4 at 9.] The jury could have inferred that such terms constructively terminated the Distribution Agreement because adherence to them would have effectively put Plaintiff out of business. [Dkt. No. 189 at184:21-185:13 (Mr. Tsai's testimony that Plaintiff would have had to give up half of its revenue as a result, and that Defendant was "trying to kill us and take everything away"); Dkt. No. 192 at 526:1-527:1 (Mr. Jean's testimony that Plaintiff would have had to sacrifice "way more" than "half of [its] revenue" if it complied with such conditions).]

Furthermore, Plaintiff presented evidence indicating that Defendant breached the agreement. Importantly, and preliminarily, although "[Defendant] had the right to terminate [Plaintiff] as its exclusive domestic distributor," there was evidence that "[Defendant] breach[ed] the agreement by the way it terminated the agreement." (Opp. to JMOL Mot. at 15.) For example, Plaintiff presented evidence that from 2013 to 2014, Defendant attempted to solicit not just other distributors in the United States, but more specifically, Plaintiff's dealers.[4] [Dkt. No. 189 at 177:15-181:9; Dkt. No. 191 at 345:4-23, Dkt. No. 192 at 444:5-14, 484:17-485:14, 522:15-523:7; Dkt. No. 200-3 at 23-24]; (*see also* Section III.A.2., *infra*). Based on this evidence, the jury could have inferred that such actions violated the aforementioned exclusivity term and the implied covenant of good faith and fair dealing. *See Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1103 (E.D. Cal. 2010) ("[I]n the context of an oral contract . . . the scope of the implied duty must be determined by the trier of fact."). Also, the fact that Defendant did not buy back the inventory it sold to Plaintiff could have been construed as a breach of the aforementioned termination terms. [Dkt. Nos. 191 at 355:9-12; 193 at 545:20-547:6.][5]

---

open the possibility that Mr. Tsai and Mr. Chen, or other party representatives, agreed to termination terms; and (2) stated that he *was* aware of this one termination term, [*id.* at 567:2-569:8].

[4] Notably, and despite Defendant's characterization of Mr. Jean's testimony as advocating Defendant's unfettered right to seek out other dealers in the United States, (JMOL Mot. at 5-6), Mr. Jean testified that any such right was subject to "the original agreement" between the two parties. [Dkt. No. 193 at 577:21-578:17.]

[5] To the extent Defendant argues that its urging Plaintiff to increase sales somehow insulated Defendant from any damages, (Reply Re New Trial Mot. at 14-16), the evidence did not indicate that Plaintiff was subject to a sales quota after

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

Lastly, there is evidence that, as a result of Defendant's breach of the Distribution Agreement's terms, Plaintiff suffered the following damages described by Plaintiff's damages expert, Jason Engel ("Mr. Engel"), and confirmed by Mr. Jean: (1) costs of repairing and repurchasing defective machines; and (2) costs of purchasing and keeping machines/parts inventory with marginal value. [*See* Dkt. No. 193 at 542:14-543:17, 545:11-546:2, 546:11-547:6]; (*see also* Section III.B., *infra*).

Accordingly, the jury's verdict that Defendant breached the terms of the Distribution Agreement is supported by substantial evidence and not contrary to the clear weight of the evidence.

        2.        <u>There was Substantial Evidence of Fraud</u>

Defendant also claims that there was insufficient evidence of fraud because: (1) Plaintiff was aware of Defendant's intention to find another distributor; (2) Defendant had no duty to disclose its intention to commit tortious interference to Plaintiff; and (3) Plaintiff did not present any evidence of a fiduciary relationship with Defendant. (JMOL Mot. at 11, 13; Reply Re JMOL Mot. at 10-13; Reply Re New Trial Mot. at 13-14.)

As a rule, the elements of an action for fraud based on concealment are that: "(1) the defendant must have concealed or suppressed a material fact[;] (2) the defendant must have been under a duty to disclose the fact to the plaintiff[;] (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff[;] (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact[;] and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) (internal citation and quotation marks omitted). "In the absence of a fiduciary or confidential relationship, a duty to disclose arises . . . if material facts are known only to the defendant and the defendant knows that the plaintiff does not know or cannot reasonably discover the undisclosed facts." *Karoutas v. HomeFed Bank*, 232 Cal. App. 3d 767, 771 (1991).

Here, there was sufficient evidence that from early 2013 to 2014, Defendant attempted to find new U.S. distributors for its machines rather than keep Plaintiff as its exclusive distributor. [Dkt. No. 191 at 345:4-23 (Mr. Lu admitting that, in 2013, he: (1) asked Mr. Tseng to research/identify other potential distributors; (2) sent letters to those companies inquiring about whether they could be distributors; and (3) visited with those companies that followed up); Dkt. No. 192 at 444:5-14 (Mr. Tseng testifying that Defendant started to look for a new U.S. distributor in the "beginning of 2013"); Dkt. No. 192 at 484:17-485:14 (Mr. Jean testifying that in 2013, Mr. Tseng took Plaintiff's dealer list and made a copy of it); Dkt. No. 189 at 177:15-181:9 (Mr. Tsai testifying that, in 2014: (1) Mr. Tseng sent an email to Plaintiff's dealer, stating that Defendant was looking for new partners because Plaintiff

---

2010 that would have allowed Defendant to walk away from the Distribution Agreement in any manner it wished, at any time, absolved of any and all damages. [*See* Dkt. No. 191 at 334:22-335:5, 411:14-16.]

Case 2:14-cv-06516-JCG Document 210 Filed 03/07/17 Page 7 of 17 Page ID #:4119

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

was not performing well; (2) he had never heard from Defendant directly regarding such underperformance; and (3) Defendant was attempting to sell equipment to Plaintiff's dealers at a lower price than what Plaintiff itself paid to Defendant); [Dkt. No. 200-3 at 23-24 (the aforementioned email dated May 7, 2014); Dkt. No. 192 at 522:15-523:7 (Mr. Jean testifying that based on his read of the aforementioned email, it appeared that Defendant was trying to replace Plaintiff).]

There was also evidence that Plaintiff was unaware of Defendant's interest in a new distributor for the United States until April 2014, when Defendant ran an advertisement in a trade magazine seeking new agents. [Dkt. No. 189 at 154:19-156:1-25, 177:15-23 (Mr. Tsai testifying that he was "so surprised" to see the advertisement, that Defendant never provided "any indication that [it was] going to run these ads," and that he first found out from his own dealer in April 2014); Dkt. No. 192 at 477:13-16 (Mr. Tseng testifying that "[Defendant] had done nothing to disclose to [Plaintiff] that it was looking for a new distributor" prior to running the advertisement); Dkt. No. 191 at 349:25-350:3 (Mr. Lu testifying that the first time Defendant informed Plaintiff of its intent was in 2014); Dkt. No. 192 at 521:12-522:5 (Mr. Jean testifying that the first time he learned about Defendant's efforts to find a new distributor was when Plaintiff's own dealer informed them of the advertisements).] Furthermore, there is ample evidence that Plaintiff — while aware of Defendant's requests for increased sales — was unaware of any sales quota that, if unmet, would lead to Defendant's solicitation of other distributors. [Dkt. No. 190 at 250:18-21; Dkt. No. 191 at 334:22-335:5; Dkt. No. 191 at 411:14-16.] As such, based on the evidence presented, a jury could infer that Plaintiff did not know about Defendant's intentions until April 2014.[6]

The evidence also showed that, even though Defendant had already begun its solicitation process, it accepted Plaintiff's order for "more than a million dollars worth of equipment" in September 2013. [Dkt. No. 191 at 348:19-349:11 (testimony of Mr. Lu).] Plaintiff's evidence indicates that Plaintiff would not have made the September 2013 purchase if it had known that Defendant was reaching out to other distributors. [Dkt. No. 189 at 173:19-175:11 (Mr. Tsai testifying that he would never have placed the order, which cost $6-7 million, if he had known that Defendant was looking for new distributors).]

As such, there is substantial evidence that: (1) Defendant chose not to inform Plaintiff of its solicitation efforts; (2) such efforts constituted information that was unavailable to Plaintiff; (3) Plaintiff would not have made such a costly purchase in fall 2013 had it known about such efforts; and (4) Plaintiff is unable to sell all of the equipment purchased.[7] (*See* Section III.A.1, *supra*.)

---

[6] Although Defendant claims that a November 7, 2013 email to Plaintiff — in which a Defendant representative informed Plaintiff that "[Defendant] wanted to open up its United States market . . . if [Plaintiff] did not increase its sales" — evidences Defendant's intent to employ other dealers, (JMOL Mot. at 11); [*see also* Dkt. No. 186-1 at 7], the jury could instead have interpreted the email as a means to motivate Plaintiff to sell more of Defendant's equipment.

[7] Because there was evidence that "material facts [were] known only to the [D]efendant" and "[D]efendant kn[ew] that the [P]laintiff d[id] not know or [could not] reasonably discover the undisclosed facts," Defendant had a duty to disclose such facts. *See Karoutas*, 232 Cal. App. 3d at 771. Defendant's reliance on *Bank of America Corp. v. Superior Court*, 198

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

Accordingly, the jury's verdict that Defendant committed fraud is supported by substantial evidence and not contrary to the clear weight of the evidence.

**B. Neither Judgment as a Matter of Law Nor a New Trial is Warranted on the Grounds that Plaintiff Did Not Present Sufficient Evidence to Establish the Amount of Compensatory Damages**

1. <u>Non-Expert Testimony in Support of Damages</u>

First, Defendant claims that there was insufficient evidence to support the jury's $1,203,000[8] award for lost profits due to the loss of machinery inventory, and $1,135,000 award for lost profits due to the loss of Defendant's parts inventory because: (1) Plaintiff still had the ability to sell the machine/parts inventory; and (2) Defendant should be entitled to offset any damages awarded to Plaintiff by the value of the machines/parts inventory. [JMOL Mot. at 15-17.]

Importantly, Plaintiff presented evidence indicating that: (1) the value of its inventory was largely diminished, severely weakening Plaintiff's ability to retain value for such inventory, and rendering any offset unnecessary or unwarranted; and (2) Plaintiff is unable to exhaust all of its inventory because its dealers and customers are unwilling to work with Plaintiff. [Dkt. No. 189 at 185:25-187:17; Dkt. No. 193 at 542:5-10, 543:24-544:20]; (*see also* Sections III.D-E., *infra*).

Second, Defendant claims that there was insufficient evidence to support the jury's $2,489,000 award for lost profits due to the loss of machine service and repair of machinery, which was based on a projection of annual profits for the next ten years, because: (1) Defendant could terminate the Distribution Agreement at any time without meeting any specific terms; (2) not being the sole distributor for Defendant did not prevent Plaintiff from obtaining revenue; and (3) Plaintiff still had the necessary parts to service machines. (JMOL Mot. at 17-19.)

As mentioned above, there was evidence that Defendant breached specific terms to the Distribution Agreement, like those governing the manner in which a party can terminate the relationship. (*See* Section III.A.1., *supra*.) Furthermore, Plaintiff showed that the reason for its increased revenue

---

Cal. App. 4th 862, 872-73 (2011), (JMOL Mot. at 13), to argue against the existence of such a duty is misplaced, as the court there relied on another California Court of Appeal case in which there was "no existing or anticipated contractual relationship or any other relationship . . . that would give rise to a duty to disclose," and subsequently found no duty. *See* 198 Cal. App. 4th at 872 (quoting and citing *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 338 (1997). Furthermore, even if a plaintiff cannot rely on a defendant's failure to disclose an intentional tort as the basis for a fraudulent concealment action, (Opp. to JMOL Mot. at 13), Defendant fails to show that, in light of a contractual relationship in which the implied covenant of good faith and fair dealing was breached, a fraudulent concealment action is prohibited. (*See* Section III.A.1., *supra*.)

[8]    This and the other damages figures mentioned in this section are contained in Mr. Engel's expert report. [Dkt. No. 186-1 at 22.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

following such termination was due to its immediate efforts to liquidate some of its inventory, which efforts did not undo the financial harm caused by the termination. [Dkt. No. 189 at 188:6-191:1]; (*see also* Section III.D., *infra*). Lastly, Plaintiff presented evidence that the parts it had in inventory were insufficient to service its dealers' machines moving forward. [Dkt. No. 193 at 543:24-544:16]; (*see also* Section III.D., *infra.*)

Third, Defendant claims that evidence did not support the jury's $1,376,000 award, for lost profits due to the cost of repair and purchase of defective machinery, because there was no evidence that the machines at issue were within the warranty period of one or two years. (JMOL Mot. at 19-20.)

But Mr. Jean verified at trial that this amount was based on "the cost of repair" and "repurchase" of defective "high profile manufacturing [] machine[s]," as Plaintiff's, Defendant's, and a third party servicer had to be called in to repair the machines. [Dkt. No. 193 at 546:13-547:6.] That the jury chose to believe these figures — rather than assume that a one-year warranty period that may or may not have applied to those machines limited Plaintiff's recovery for breach of the Distribution Agreement — does not warrant judgment as a matter of law or a new trial.

As such, not even accounting for Mr. Engel's testimony, the jury's compensatory damages verdict was supported by substantial evidence and not contrary to the clear weight of the evidence.

    2. <u>Expert Testimony in Support of Damages</u>

Defendant also claims that there was insufficient evidence in support of the compensatory damages verdict because Mr. Engel failed to further investigate the above damages figures. (JMOL Mot. at 14-19; Reply Re JMOL at 13-15.) Specifically, Defendant claims that because Mr. Engel relied on three measures of damages (*i.e.*, lost profits due to loss of purchased machines, lost profits due to loss of purchased parts, and cost of repairs and purchase of defective machines) that were "provided to him by Plaintiff" and not "independently verif[ed]," Plaintiff's testimony should have been excluded. (New Trial Mot. at 8-12; Reply Re New Trial Mot at 6-9.)

Federal Rule of Evidence 702 provides that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony under Rule 702 must be both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Rule 702 also requires that there be a valid connection to the pertinent inquiry as a precondition to admissibility. *Id*. at 592. It is within the sound discretion of the trial judge to determine whether a qualified expert: (1) bases his testimony upon sufficient facts or data; (2) bases his testimony on reliable principles and methods; and (3) has applied the principles and methods reliably to the facts of the case. *See* Fed .R. Evid. 702; *Daubert*, 509 U.S. at 589.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

Moreover, the notion that an expert "could, or should, have reviewed more data goes to the weight, [and] not the admissibility of his opinions." *Frye v. Warden, San Quentin State Prison*, 2010 WL 3210767, at *3 (E.D. Cal. Aug. 10, 2010); *see also United States v. Reagan*, 2009 WL 1185666, at *1 (9th Cir. May 4, 2009) ("[A]ny possible inaccuracies or manipulation of the underlying data went to the weight of the report, not its admissibility."); *United States v. Mirama Enterprises, Inc.*, 2002 WL 34364408, at *3 (S.D. Cal. June 17, 2002) (finding that a party's "objection of insufficient data" to an expert opinion "really goes to the weight, and not the admissibility, of the testimony"). As such, "an expert may rely on financial data supplied by a plaintiff to conduct a financial analysis without having independently verified the data." *Am. Aerial Servs., Inc. v. Terex USA, LLC*, 2015 WL 1947265, at *4 (D. Me. Apr. 29, 2015).

With respect to the JMOL Motion, Defendant's argument is subject to plain error review, which requires: "(1) an error; (2) that the error be plain or obvious; (3) that the error have been prejudicial or affect substantial rights; and (4) that review be necessary to prevent a miscarriage of justice." *Settlegoode v. Portland Pub. Sch.*, 371 F.3d 503, 517 (9th Cir. 2004) (internal citation omitted); (*see also* Reply Re JMOL Mot. at 13-15). With respect to the New Trial Motion, Defendant's argument is subject to the same "contrary to the clear weight of the evidence" standard mentioned above and applicable to every argument in support of a new trial. *See Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

    a. Mr. Engel's Testimony Was Admissible

Here, Defendant essentially criticizes Mr. Engel for not having reviewed more data before reaching his conclusions on damages. (*See* New Trial Mot. at 8-12; Reply Re New Trial Mot. at 6-9.) As an initial matter, while it may be true that Mr. Engel "could, or should, have" verified the financial figures provided to him by Plaintiff, such objections go to the weight of his testimony, rather than to its admissibility. *See, e.g., Frye v. Warden, San Quentin State Prison*, 2010 WL 3210767, at *3 (E.D. Cal. Aug. 10, 2010). As such, no error, plain or harmless, was committed in admitting Mr. Engel's testimony.

    b. Mr. Engel's Testimony Was Not Prejudicial, Did Not Affect Substantial Rights, and Do Not Warrant a New Trial

Even assuming, *arguendo*, Mr. Engel's testimony was erroneously admitted, Defendant fails to show that: (1) there was an effect on its substantial rights; (2) it suffered any harm or prejudice; or (3) Mr. Engel's damages figures, which presumably were adopted by the jury, were contrary to the clear weight of the evidence. Specifically, the financial data relied upon by Mr. Engel was admitted into evidence without objection, and verified as accurate by Mr. Jean through live testimony.[9] [*See* Dkt. No.

---

[9] Although Defendant argues that Mr. Engel did not account for the fact that Plaintiff had sold off machines and was still using some of its parts inventory: (1) the testimony regarding Plaintiff's machine sales referred to an earlier time period

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

193 at 542:14-543:17, 545:11-546:2, 546:11-547:6.] The jury was thus already aware of the damage figures, and had the information to render its verdict.

Accordingly: (1) the Court committed no error in admitting Mr. Engel's testimony; (2) the admission of such testimony did not affect substantial rights or cause prejudice; and (3) the testimony itself, including the damages figures, was not contrary to the clear weight of the evidence.

As such, the jury's verdict as to compensatory damages is supported by substantial evidence and not contrary to the clear weight of the evidence.

    **C.**    **A New Trial is Not Warranted Based on the Denial of Defendant's Request to Instruct the Jury on California Commercial Code Section 2309**

Defendant claims that: (1) California Commercial Code section 2309 ("Section 2309") applies to the Distribution Agreement; (2) the Court erred in refusing to issue an instruction, pursuant to Section 2309, that the Distribution Agreement's exclusivity term could be terminated at any time with reasonable notice; and, as a result (3) the jury awarded "excessive damages . . . which . . . included highly speculative and foreseeable damages." (New Trial Mot. at 4-6; Reply Re New Trial Mot. at 1-6.)

As a rule, a party seeking a new trial based on the trial court's jury instructions must show *both* instructional error *and* that the error was prejudicial, or not harmless. *See Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Tritchler v. Cty. Of Lake*, 358 F.3d 1150, 1154-55 (9th Cir. 2004). And, "[i]n reviewing jury instructions, the relevant inquiry is whether the instructions *as a whole* are misleading or inadequate to guide the jury's deliberation." *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000) (emphasis added).

    1.  <u>No Instructional Error</u>

As an initial matter, it is not a certainty that Section 2309 applies to the Distribution Agreement here. Specifically, the code section states, in relevant part, that: (1) "Where the contract provides for successive performances but is indefinite in duration it . . . unless otherwise agreed may be terminated at any time by either party"; and (2) "Termination of a contract by one party except on the happening on an agreed event requires that reasonable notification be received by the other party . . . ." Cal. Com. Code § 2309(2), (3). However, Section 2309 does not address contracts that contain termination obligations, or terms that describe what a party is obligated to do in order to terminate. This is relevant because, although the Distribution Agreement contained no durational term, it *did* contain terms governing

---

immediately following termination, which was already accounted for in the more recent inventory lists presented at trial (*see* Section III.D., *infra*); [*see also* Dkt. No. 205 at 41:19-42:1]; (2) Mr. Engel *did* confirm, prior to testifying, that Plaintiff's parts inventory was, for the most part, consistent with the damages figure he proposed, [Dkt. No. 193 at 664:7-17]; and (3) the jury was mindful of the largely diminished value of Plaintiff's machines and parts servicing, (*See* Sections III.D-E., *infra*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

termination. (*See* Section III.A.1, *supra.*) As such, it is not clear that Section 2309 and case law regarding indefinite terminable-at-will contracts, (New Trial Mot. at 4), are dispositive of the issue presented here.

Furthermore, the size and scope of the Distribution Agreement — as evidenced by Plaintiff's investment in millions of dollars-worth of Defendant's machines and various obligations (*i.e.*, installation of machines at the customer's facility, training of customers on use of machines, and provision of warranty support and repair/maintenance services), [Dkt. No. 190 at 299:10-300:12, 319:2-14; Dkt. No. 192 at 443:8-18] — may have negated any possibility that it was terminable at will subject only to reasonable notice. *See Zinn v. Ex-Cell-O Corp.,* 148 Cal. App. 2d 56, 74 (1957) ("The very nature and size of the undertaking which burdened plaintiffs once they executed the . . . contract indicates that there was no intention that it should be terminable at will.").

As such, Defendant fails to show that the Court's denial of Defendant's request to include a jury instruction on Section 2309 amounted to instructional error.

      2.  <u>No Prejudice Even if Instructional Error Exists</u>

Regardless, even if the denial of Defendant's request to include jury instructions on Section 2309 was erroneous, there was no prejudice suffered by Defendant as a result.

          a.  No Prejudice In Light of Totality of Instructions Given

Defendant claims that due to the non-issuance of its proposed instruction, the breach of contract instructions were generally "incomplete and misleading." (New Trial Mot. at 4.) However, the issued jury instructions were not only thorough, but also in line with Section 2309's objectives. Specifically, the purpose behind limiting damages — for breaches of indefinite, terminable-at-will contracts — to a reasonable notice period is to ensure that the plaintiff's damages do not surpass the benefit of its bargain. *See Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396, 409 (Ct. App. 1988) (finding that, pursuant to the benefit of the bargain principle, damages for breach of contract that could be terminated "for any reason, or no reason," were limited to a specified notice period). The Court echoed this purpose in denying Defendant's request. [*See* Dkt. No. 194 at 689:24-25.]

Here, the jury was instructed that Plaintiff's damages are subject to the benefit of its contractual bargain with Defendant. [Dkt. No. 161 at 28 (Jury Instruction No. 26, which states, in relevant part, that "[t]he purpose of such damages is to put [Plaintiff] in as good a position as it would have been if [Defendant] had performed as promised.").] With this instruction in mind, the jury was free to determine, based on all the circumstances, what amount of time constituted a reasonable notice period,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

and what amount of money constituted Plaintiff's benefit of its bargain.[10] *See Connelly v. Venus Foods, Inc.*, 174 Cal. App. 2d 582, 587 (1959) (finding that it is the jury's role to determine "the reasonable notice of termination that should [] have been given"); *Int'l Aerial Tramway Corp. v. Konrad Doppelmayr & Sohn*, 70 Cal. 2d 400, 408 (1969) (finding that "whether [] nine years . . . constituted a reasonable time" had to be "resolved at trial," "in view of all the circumstances"). Furthermore, Defendant had the opportunity to argue to the jury a particular reasonable notice period.[11]

As such, because the instructions as a whole sufficiently addressed the objectives of a Section 2309 instruction, *see Dixon*, 201 F.3d at 1230, Defendant suffered no prejudice.

      b. No Prejudice Because Damages Are Not Attributable to Lost Profits

Defendant claims that because the jury's damages award included $2,489,000 in "Lost Profits due to loss of machine service and repair of [Defendant] machinery" based on Mr. Engel's ten-year lost profits analysis, the lack of a Section 2309 instruction caused Defendant prejudice. (New Trial Mot. at 4); [*see also* Dkt. No. 187-2 at 2]. But Defendant fails to show that these damages were not attributable to and allowable under Plaintiff's interference with contractual business relations claim. *See Nuvasive, Inc v. Madsen Med., Inc.*, 2015 WL 10943609, at *12 (S.D. Cal. July 20, 2015) (rejecting argument that damages for an interference claim should be limited to "the term of the [] [a]greement" or "to those foreseeable by the parties at the time of contracting" because "[t]he measure of damages for intentional interference with contractual relations or prospective economic advantage is an amount that will reasonably compensate plaintiff for all loss or harm, providing that [the jury] find it was [or will be] suffered by plaintiff and caused by the defendant's conduct" (internal quotation marks omitted) (citing *Sole Energy Co. v. Petrominerals Corp.*, 26 Cal. App. 4th 212, 232 (2005))); [*see also* Dkt. No. 205 at 37:19-38:3 (Plaintiff's counsel explaining that, due to Defendant's tortious interference, "[t]here was enough for the jury to determine that [such conduct] was the reason why [Plaintiff] [was] not getting the service contracts [it] was getting before.").]

As a result, Defendant fails to show that any potential error in omitting Section 2309 instructions was not harmless.

//

//

---

[10] Thus, even if Plaintiff's investments and obligations did not render Section 2309 inapplicable, they may have been relevant to the jury in its determination of: (1) a longer-than-usual notice period; and, relatedly (2) Plaintiff's benefit of the bargain damages. [*See* Dkt. No. 205 at 17:2-10 (Defense counsel affirming that "the thrust of [its] argument" is that "if [Plaintiff] invested heavily . . . it [] goes to perhaps the length of the reasonableness period.").]

[11] Defendant did, in fact, challenge Plaintiff's expert who testified that ten years was a reasonable period of time from which to calculate lost profits damages. [Dkt. No. 193 at 660:2-17 (Defendant's cross examination of Plaintiff's expert witness).]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

### D. A New Trial is Not Warranted Because the Jury's Verdict Was Not Against the Clear Weight of the Evidence

Defendant further claims that the weight of the evidence does not support the jury's findings on intentional interference with contractual business relations or any damages flowing from those claims. (New Trial Mot. at 14-15.)[12]

As a rule, interference with contractual business relations requires: (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). "One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for . . . actual harm to reputation, if they are reasonably to be expected to result from the interference." *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 233 n.7 (2005).

Defendant takes issue with the alleged lack of evidence in support of the last three elements of the claim. (*See* New Trial Mot. at 15; Reply Re New Trial Mot. at 9-12.) However, Plaintiff presented evidence showing that Defendant intentionally interrupted Plaintiff's contractual relationships with its dealers, causing Plaintiff harm. First, as mentioned above, there was testimony that Mr. Tseng took and copied Plaintiff's dealer list. [Dkt. No. 192 at 484:17-485:14.] Second, also as mentioned above, Mr. Tseng solicited Plaintiff's dealer on May 7, 2014, and told the dealer that "[Plaintiff] is not performing as we expected in the US market."[13] [Dkt. No. 192 at 522:15-523:7; Dkt. No. 200-3 at 23.] Third, Plaintiff's representatives testified that: (1) Plaintiff is unable to exhaust its inventory because potential customers were "told that [Plaintiff] no longer [has] the representation of the machine" and are therefore concerned about the "supply of the parts and other service"; (2) potential customers were concerned that Plaintiff would go out of business after seeing "what's happening with [Plaintiff]"; and (3) Plaintiff now suffers a "broken reputation." [Dkt. No. 189 at 185:25-187:17; Dkt. No. 193 at 542:5-10, 543:24-544:20.] Fourth, Plaintiff introduced evidence showing that nearly all of Defendant's U.S. sales, following the termination of the Distribution Agreement, were to Plaintiff's prior dealers. [Dkt. No. 191 at 338:19-25; Dkt. No. 193 at 547:13-18; Dkt. No. 200-7 at 6.] The jury could have inferred that these were lost sales that Plaintiff could have benefited from if not for the interference. Fifth, while Plaintiff's

---

[12] Because the Court already decided that Defendant's arguments regarding insufficient evidence of Plaintiff's breach of contract, fraud, and resulting damages claims do not warrant a new trial, (*see* Section III.A-B, *supra*), those arguments do not need to be addressed again here.

[13] To the extent that Plaintiff had to prove that this statement was untrue, (Reply Re New Trial Mot. at 12), Plaintiff did provide evidence that it: (1) was never subjected to a specific sales quota; (2) was never told that if it did not meet certain quotas, Defendant had the right to breach the exclusivity arrangement; and (3) received a medal from Defendant for Plaintiff's 2013 "sales performance." (*See* Section III.A.2., *supra*.); [*see also* Dkt. No. 189 at 171:13-19; Dkt. No. 191 at 343:8-344:4, 387:19-388:24]. As such, the jury may have been persuaded of the statement's falsity.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

revenue did increase immediately following Defendant's termination of the Distribution Agreement, (New Trial Mot. at 17), there is evidence that this was due to Plaintiff's efforts to quickly liquidate its inventory of Defendant's machines, which efforts did not undo the "big hurt" and subsequent "tanked" sales suffered by Plaintiff. [Dkt. No. 189 at 188:6-191:1.]

As such, the jury's verdict that Defendant interfered with contractual relations was not against the clear weight of the evidence presented at trial.

**E.    A New Trial on Damages, or Alternatively, Remittitur is Not Warranted**

As a rule, a jury's award of damages "must [be] uph[e]ld . . . unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork."  *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996), *aff'd*, 526 U.S. 687 (1999).  Notably, "substantial deference" is given to "a jury's finding of the appropriate amount of damages."  *Id.* (internal citation omitted).

   1.   Compensatory Damages Award is Not Grossly Excessive

Defendant claims that "the jury awarded [Plaintiff] excessive damages including particularly damages for its lost profits due to loss of machine service and repair of [Defendant] machinery, excessive damages in the form of double compensation with regard to [Plaintiff]'s current inventory of [Defendant] machines and parts, and excessive punitive damages."  (New Trial Mot. at 18; Reply Re New Trial Mot. at 16-18.)

Specifically, Defendant claims that the $2,489,000 presumably awarded by the jury for "Lost Profits due to loss of machine service and repair of [Defendant] inventory" was "impermissible" because it was calculated over a period of ten years.  (New Trial Mot. at 19-20.)  However, as mentioned above: (1) Defendant has failed to show that a cap on damages based on a reasonable notice period of less than ten years applies to the Distribution Agreement; and (2) even if it did, Defendant fails to show that these damages were not awarded for Defendant's interference with contractual business relations.  (*See* III.C., *supra.*)

Furthermore, Defendant claims that "[Plaintiff] was compensated twice — it retained the machines and parts it had purchased from [Defendant] and continued to have the ability to sell them and provide support services for the machines it sold . . . ."  (New Trial Mot. at 20.)  But, to the extent that the jury awarded damages for lost profits of machines and parts inventory that Plaintiff did not tender back to Defendant, Plaintiff's evidence indicates that the inventory may no longer be fit for sale.  [Dkt. No. 193 at 543:24-544:20 (Mr. Jean testifying that "[i]f we cannot get new parts to [service machines][,] those customers are not . . . buying the parts, [and] the parts remain in inventory," and "[i]t's hard to sell [the] machine[s] after people [are] told that you no longer have the representation of the machine").]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

As such, Defendant fails to show that the jury's verdict on compensatory damages was grossly excessive or against the clear weight of the evidence presented at trial.

    2. Punitive Damages Award is not Grossly Excessive

As a rule, a punitive damages award must be based on three factors: (1) the reprehensibility of the defendant's conduct; (2) the amount of compensatory damages awarded to or actual harm suffered by the plaintiff; and (3) the defendant's financial condition. *Behr v. Redmond*, 193 Cal. App. 4th 517, 535, (2011) (internal citation and quotation marks omitted), *as modified* (Mar. 25, 2011).

Defendant claims that the jury awarded punitive damages without considering the first and third factors. (New Trial Mot. at 21; Reply Re New Trial Mot. at 21-24.) With respect to the first factor, the jury found that Plaintiff "engaged in malice, oppression or fraud" by "clear and convincing evidence," [Dkt. No.168 at 3], based on evidence that: (1) Defendant solicited Plaintiff's dealers, without Plaintiff's knowledge, during the course of the Distribution Agreement; and (2) deleted emails that may have contained additional information about such solicitations. (*See* Section III.A.2., *supra*); [*see also* Dkt. No. 192 at 433:12-17 (Mr. Tseng admitting that the jury would "never ever know to whom [he] sent e-mails to asking dealers to become direct dealers of [Defendant] because [he] destroyed all of [his] e-mails").] Accordingly, the jury considered evidence of Defendant's reprehensibility in issuing its punitive damages award. *See Mattel, Inc. v. MGA Entm't, Inc.*, 801 F. Supp. 2d 950, 954 (C.D. Cal. 2011) (finding that "'affirmative acts of misconduct' marked not just by malice, but a breach of basic commercial ethics and fraud" constitutes the requisite reprehensibility (internal citation omitted)).

With respect to the third factor, the jury heard evidence that Defendant is Taiwan's largest manufacturer of machine tools, has facilities exceeding 80,000 square meters, has over 300 offices in 65 countries, and has sold more than 46,000 machine centers worldwide. [Dkt. No. 195 at 935:11-935:16; Dkt. No. 200-1 at 5-6.] As such, the jury considered evidence of Defendant's financial condition in issuing its punitive damages award. *See Pfeifer v. John Crane, Inc.*, 220 Cal. App. 4th 1270, 1308 (2013) ("Our Supreme Court has prescribed no rigid standard for measuring the ability to pay. Although net worth is the most common measure, its application is not mandatory, as net worth 'is subject to easy manipulation.'" (internal citations omitted)), *as modified on denial of reh'g* (Nov. 27, 2013).

As such, the jury's award of punitive damages was not grossly excessive or against the clear weight of the evidence.

**IV.    Order**

Accordingly, Defendant's JMOL Motion and New Trial Motion, [Dkt. No. 182, 186, 187], are **DENIED**.

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | LA CV 14-6516 JCG | Date | March 7, 2017 |
|---|---|---|---|
| Title | *Mighty Enterprises, Inc. v. She Hong Industrial Co. Ltd.* | | |

cc: Parties of Record

                                                            00   :   00
                                        Initials of Clerk        kh